Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York

7:20-cv-02058

| | |
|---|---|
| Emelina Webber, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| McDonald's Corporation, | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  McDonald's Corporation ("defendant") manufactures, distributes, markets, labels and sells "soft serve" ice cream or reduced fat ice cream purporting to be flavored only by their natural characterizing flavor of vanilla ("Products").

2.  The Products are available to consumers from defendant's approximately fourteen thousand (14,000) fast food restaurants in the United States and are sold in sizes including cones.

3.  McDonald's menu boards in its restaurants, drive through displays, self-service kiosks, website, conventional and digital advertising, social media marketing and point-of-sale displays identify the Product as "Vanilla."

 

4.     The representations are misleading because though the flavor is represented as vanilla, the vanilla taste and flavor is not provided exclusively by vanilla but from non-vanilla sources.

I.     Vanilla is Perennial Favorite Ice Cream Flavor

5.     Ice cream is a year-round treat enjoyed by 96% of Americans.[1]

6.     Its popularity is attributed "to the perfect combination of elements – sugar, fat, frozen water, and air – that make up the mouthwatering concoction."[2]

7.     Until the early 1990s, any product named "ice cream" had to meet requirements of "not less than 10 percent milkfat, nor less than 10 percent nonfat milk solids."[3]

---

[1] Arwa Mahdawi, The big scoop: America's favorite ice-cream flavor, revealed, The Guardian, July 11, 2018
[2] Vox Creative, The Reason You Love Ice Cream So Much Is Simple: Science, Eater.com, October 12, 2017.
[3] 21 C.F.R. § 135.110(a)(2).

8.     Vanilla is the consistent number one flavor for ice cream for 28% of Americans, confirmed two groups who would know – the International Dairy Foods Association (IDFA) (ice cream producers) and National Ice Cream Retailers Association (ice cream parlors).

9.     The reasons for vanilla's staying power are "not only because it is creamy and delicious, but also because of its ability to enhance so many other desserts and treats."[4]

10.     By some estimates, approximately two-thirds of "all ice cream eaten is either vanilla or vanilla with something stirred into it, like chocolate chips."[5]

11.     The applications of vanilla ice cream include its centerpiece between chocolate wafers ("sandwich"), enrobed in chocolate on a stick ("bar"), topping a warm slice of fresh-baked pie ("à la Mode"), drizzled with hot fudge, sprinkled with crushed nuts and topped by a maraschino cherry ("sundae") or dunked in a cold frothy glass of root beer ("float").[6]

### A.   "Hard" Ice Cream: Philadelphia (American)-style v. French Ice Cream

12.     In the development of ice cream, the two main types were Philadelphia (American)-style and French ice cream, flavored of course, with vanilla.

13.     Like many confections, ice cream was brought here from France, courtesy of two statesmen who served as ambassadors to that nation:  Thomas Jefferson and Ben Franklin.

14.     While these two Founding Fathers could agree on the terms of the Declaration of Independence and Constitution, they could not agree about the superior type of vanilla ice cream.

15.     President Thomas Jefferson was a partisan of the egg yolk base, describing this treat

---

[4]Press Release, IDFA, Vanilla Reigns Supreme; Chocolate Flavors Dominate in Top Five Ice Cream Favorites Among Americans, July 1, 2018
[5]Bill Daley (the other one), Which vanilla ice cream is the cream of the crop? We taste test 12 top brands, Chicago Tribune, July 18, 2018
[6] The True Wonders of Vanilla Ice Cream, FrozenDessertSupplies.com.

as "French ice cream."[7]

16.     The French reliance on egg yolks to reduce the amount of butterfat and cream used

was not due to taste, but to the limited dairy production and relative abundance of hens.

17.     Dr. C. L. Alsberg, head of the Bureau of Chemistry, U.S. Department of Agriculture,

highlighted the differences between these varieties in a 1914 hearing:

> the early French records, the cook books, never made ice cream from cream alone.
> It was not until ice cream was introduced into England that it was ever made of
> dairy cream sweetened and flavored and frozen. The French always used cream and
> eggs or cream and milk and eggs and sugar, with fruits or starches or anything that
> would make a custard.[8]

18.     Besides the use of eggs, another difference was "that the American ice cream is raw.

And the French as a rule is cooked."[9]

19.     The egg yolk solids, when mixed with vanilla, distinguish a "French" vanilla ice

cream from its Philadelphia-style counterpart by providing a: [10]

- smoother consistency and silkier mouthfeel;

- caramelized, smoky and custard-like taste; and

- deep-yellow color.[11]

20.     Due possibly to Jefferson's efforts at popularizing this variety, ice cream with 1.4%

---

[7] Thomas Jefferson's Handwritten Vanilla Ice Cream Recipe, Open Culture, July 13, 2014; Thomas Jefferson's Vanilla Ice Cream, Taste of Home, June-July 2012; Thomas Jefferson's Original Vanilla Ice Cream Recipe, Jefferson Papers, Library of Congress; Anna Berkes, "Ice Cream" in Thomas Jefferson Encyclopedia, Thomas Jefferson Foundation, Inc., Monticello.org, June 28, 2013.
[8] Report of Hearing on Ice Cream Before Dr. C. L. Alsberg, Chief of the Bureau of Chemistry, U.S. Department of Agriculture, February 10, 1914 and March 7, 1914, Subject: The Use of Colloids as Stabilizes in Ice Cream, the Butter Fat Standard for Ice Cream and the Bacteriology of Ice Cream, with Special Reference to the Cincinnati Ice Cream Cases. Published by The National Association of Ice Cream Manufacturers, June 1914 at p. 19 ("Alsberg Hearings").
[9] Alsberg Hearings, Testimony of Mr. Lewis, General Manager, J. M. Horton Ice Cream Co. at p.33.
[10] The descriptor "French" or "french" preceding "vanilla" does not modify the word "vanilla."
[11] Sheela Prakash, What's the Difference Between Vanilla and French Vanilla Ice Cream?, The Kitchn, June 7, 2017.

or more egg yolk solids as part of its base is referred to as "french ice cream."[12]

21.    Meanwhile, during the sweltering summer of the Constitutional Convention of 1787, Ben Franklin's "crème froid" or "cold cream" served as a refreshing break for the delegates debating this nation's future.[13]

22.    Ever the tinkerer, Franklin adapted his ice cream to the environment by relying on the abundance of dairy farms in the Philadelphia region, the lack of hens to provide the egg yolk base and foregoing the cooking step, to more quickly produce this refreshing treat for the delegates.[14]

B.    "Soft" Ice Cream

23.    Over 150 years later, another type of frozen dairy dessert was invented, with its own conflicting origin stories.

24.    In one telling, the "Iron Lady" first female prime minister of Great Britain, Margaret Thatcher, developed the technology which added increased air into ice cream so it could be pushed through a smaller machine.[15]

25.    Another version attributes soft-serve's origins to America's own Tom Carvel,

---

[12] 21 C.F.R. § 135.110(f)(1) ("The name of the food is 'ice cream'; except that when the egg yolk solids content of the food is in excess of that specified for ice cream by paragraph (a) of this section, the name of the food is 'frozen custard' or 'french ice cream' or 'french custard ice cream'.)

[13] R. Berley, A Treatise on the History of Ice Cream in Philadelphia, The Franklin Fountain; Julia Reed, Ice cream two ways: A tale of two continents, King Arthur Flour, Blog, Aug. 24, 2018; *but see* Jeff Keys, Ice Cream Mix-ins, N.p., Gibbs Smith (2009) at 14.

[14] Vanilla Ice Cream, Philadelphia-Style, The Perfect Scoop, Epicurious.com, Dec. 2011; Dr. Annie Marshall, Vanilla Bean Ice Cream Two Ways, and Ice Cream Basics, July 8, 2011, Everyday Annie Blog ("Varieties of ice cream generally fall into two main categories: Philadelphia-style or French-style.  Philadelphia style ice creams are quicker and simpler, with a heavy cream/milk mixture for the base.  French-style ice creams have a custard base, with cooked egg yolks to help achieve a creamy texture and rich flavor.").

[15] Dina Spector, "Margaret Thatcher Helped Invent Soft-Serve Ice Cream," BusinessInsider.com, April 8, 2013 ("As a chemist for food manufacturer J. Lyons and Co. in the 1940s, Thatcher was part of the British research team that made soft-serve ice possible, according to The Washington Post's Caitlin Dewey, citing a 1983 New Scientist article.").

founder of the eponymous Carvel Ice Cream.[16]

26.    One hot summer day, Carvel's ice cream transport truck broke down, melting the hard pack ice cream.

27.    As curious neighborhood children approached and asked for the softer and gentler confection, Carvel knew he was onto something big.

28.    To be dispensed from a machine on demand, "soft serve" has a lower fat and higher air content than traditional ice cream, which is why it was originally known as "ice milk."

29.    To prevent confusion with "ice cream," the milkfat content of ice milk was required to be between two (2) and seven (7) percent.[17]

30.    Because "ice milk" was a valued product in its own right, its labeling requirements were generally consistent with those for its "big brother," ice cream, and was defined as:

> the food prepared from the same ingredients and in the same manner prescribed in § 135.110 for ice cream and complies with all the provisions of § 135.110 including the requirements for label statement of optional ingredients)

21 C.F.R. § 135.120(a)

31.    In the early 1990s, the product known as "ice milk" was redefined as "reduced fat ice cream" due to the introduction of express nutrient content claims for standardized foods.

32.    Since companies could now make "direct statement[s] about the level (or range) of a nutrient in a food, e.g., 'low sodium' or 'contains 100 calories,'" several new types of ice creams were created:[18]

---

[16] Kat Eschner, "The Science of Soft Serve," SmithsonianMag.com, August 18, 2017.
[17] *See* 21 C.F.R. § 135.120(a)(1) (repealed).
[18] 21 CFR § 130.10 – Requirements for foods named by use of a nutrient content claim and a standardized term; 21 C.F.R. § 101.13(b)(1); 21 C.F.R. § 101.13(j).

| Nutrient Content Claim + Ice Cream[19] | Difference between Modified and Standardized Ice Cream |
|---|---|
| Reduced Fat Ice Cream | • 25% less fat than a reference product[20] |
| Light Ice Cream | • 50% reduction in total fat from the reference product, or one-third reduction in calories if fewer than 50% of the calories are from fat[21] |
| No Sugar Added Ice Cream | • No amount of sugars or ingredient that contains sugars is added during processing or packaging;<br>• The food does not contain an ingredient containing added sugars[22] |
| Low Fat Ice Cream | • Not more than 3 g of total fat per serving[23] |
| Nonfat or Fat Free Ice Cream | • Less than 0.5 g of fat per serving[24] |

33.     Modified ice creams differed based on fat, sugar and calorie content.

34.     In a modified ice cream, the ingredients were required to be those permitted by the particular standard, subject to certain exceptions.[25]

35.     The standard for an ice cream variation flavored exclusively by vanilla does not permit the replacement of vanilla with non-vanilla flavors. *See* 21 C.F.R. § 130.10(d)(2).[26]

36.     Because non-vanilla flavor is not permitted in vanilla ice cream, it is by definition not permitted in vanilla ice cream versions modified by an expressed nutrient content claim.

I.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

37.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized

---

[19] 21 C.F.R. § 130.10(e) ("*Nomenclature.* The name of a substitute food that complies with all parts of this regulation is the appropriate expressed nutrient content claim and the applicable standardized term.")

[20] 21 C.F.R. § 101.62(b)(4)

[21] 21 C.F.R. § 101.56

[22] 21 C.F.R. § 101.60(c)(2)

[23] 21 C.F.R. § 101.62(b)(2)

[24] 21 C.F.R. § 101.62(b)(1)

[25] 21 C.F.R. § 130.10(d)(1).

[26] 21 C.F.R. § 130.10(d)(2) ("An ingredient or component of an ingredient that is specifically required by the standard (i.e., a mandatory ingredient) as defined in parts 131 through 169 of this chapter, shall not be replaced or exchanged with a similar ingredient from another source unless the standard, as defined in parts 131 through 169 of this chapter, provides for the addition of such ingredient (e.g., vegetable oil shall not replace milkfat in light sour cream); 21 C.F.R. § 135.110(f)(2)(i).

flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[27]

38.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[28]

39.    Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[29]

40.    It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[30]

41.    This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

42.    Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[31]

---

[27] 21 C.F.R. §169.3(c).

[28] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.

[29] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.

[30] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.

[31] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

43.     Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.   <u>Food Fraud as Applied to Vanilla</u>

44.     Vanilla is considered a "high-risk [for food fraud] product because of the multiple market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[32]

45.     The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[33]

| <u>Type of Food Fraud</u> | <u>Application to Vanilla</u> |
| --- | --- |
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor<br>• Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[34]<br>• Annatto and turmeric extracts in dairy products purporting |

[32] Société Générale de Surveillance SA, ("SGS "), <u>Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation</u>, May 2019.
[33] Kathleen Wybourn, DNV GL, <u>Understanding Food Fraud and Mitigation Strategies</u>, PowerPoint Presentation, Mar. 16, 2016.
[34] Renée Johnson, "<u>Food fraud and economically motivated adulteration of food and food ingredients</u>." Congressional Research Service R43358, January 10, 2014.

|  |  |
|---|---|
|  | to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high-quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use<br>• Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor perception |
| ➢ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| ➢ Compounding, Diluting, Extending | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[35]<br>• Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[36]<br>• "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➢ Addition of fillers to give the impression there is more of the product than there actually is | • Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L- |

---

[35] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.
[36] Berenstein, 423.

4486-09, Superior Court of New Jersey, Middlesex County

- Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list
  - "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of flavor and used for aesthetics
  - "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described

➢ Ingredient List Deception[37]
  - "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food
  - "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor
  - "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

46.    The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

> the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

*The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[38]

B.    The Use of Vanillin to Simulate Vanilla

---

[37] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.
[38] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).

47.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

48.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

49.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to a full gallon of single-fold vanilla extract."[39]

50.    Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

51.    Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

52.    Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

53.    This means that if a product is represented as being characterized by vanilla yet contains non-vanilla vanillin, the label and packaging must declare vanillin an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (Vanilla-vanillin flavoring and Vanilla-vanillin powder).

---

[39] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

54.     This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

C.   <u>Production of "Natural Vanillins" Combined with "Natural Vanilla"</u>

55.     The past ten years have seen many vanillins purporting to be a "natural flavor" – derived from a natural source material which undergoes a natural production process.

56.     However, "natural vanillin" is not a "natural vanilla flavor" because the raw material is not vanilla beans but ferulic acid and eugenol.

57.     Ferulic acid can be converted to vanillin through a natural fermentation process which is cost prohibitive for almost all applications.

58.     Vanillin from eugenol is easier to produce in a way claimed to be a "natural process."

59.     However, because this process occurs without transparency or verification in China, regulators and consumers are not told the production method is more properly described as that of an artificial flavor, involving a chain of chemical reactions.

II.     Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

60.     The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom and Takasago International along with the largest food manufacturing companies such as Unilever.

61.     The recent global shortage of vanilla beans has provided the flavor industry another opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[40]

62.     Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products

---

[40] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.

contained *only* vanilla.

63.    These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A.   <u>Flavor Industry's Attempt to Disrupt Supply of Vanilla to Create a "Permanent Shortage"</u>

64.    The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices.

65.    Contrary to their intention, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla and harvest palm oil under the pretense of "crop diversification."

66.    There have also been allegations that these programs use child and/or slave labor.

67.    Other tactics alleged to be utilized by these companies include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to remaining bidders.[41]

68.    The reasons for these counterintuitive actions is because they benefit from high vanilla prices and the use of less real vanilla.

69.    When less vanilla is available, companies must purchase the higher margin, proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

B.   <u>Use of Vanilla WONF Ingredients to Replace and Provide Less Vanilla</u>

70.    Though flavor companies will not admit their desire to move off real vanilla, this conclusion is consistent with the comments of industry executives.

71.    According to Suzanne Johnson, vice president or research at a North Carolina

---

[41] Monte Reel, <u>The Volatile Economics of Natural Vanilla in Madagascar</u>, Bloomberg.com, Dec. 16, 2019.

laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

72.    The head of "taste solutions" at Irish conglomerate Kerry urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

73.    A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[42]

74.    These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol and piperonal, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[43]

75.    The effort to replace vanilla with so-called Vanilla WONF started in the late 1960s, but the last 10 years have seen the proliferation of this ingredient.

C.   Decline of Industry Self-Governance

76.    That high-level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

77.    The once powerful and respected trade group, The Flavor and Extract Manufacturers Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

78.    FEMA previously opposed industry efforts to deceive consumers but cast the public to the curb in pursuit of membership dues from its largest members, such as Unilever.

---

[42] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[43] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

III.    Ice Cream Flavor Labeling

79.    According to J. Mark Black, Ph.D., "There has been longstanding confusion within the U.S. food industry about how vanilla is defined for use in vanilla ice cream products."  Exhibit F, "The Use of Vanilla in Ice Cream: Rules, Regulations and Interpretations – All Are Needed For A Thorough Understanding," *Vanilla*, 1st International Congress, 2006

80.    The ice cream manufacturers "sought clarification of these rules from the U.S. Food and Drug Administration (FDA). From 1979 to 1983, the FDA provided interpretations and ultimately an advisory opinion that clarified the rules around each category. However these have not been widely circulated, thus many ice cream manufacturers continue to be unsure about the legal status of their principal display panels."  Exhibit F, p. 3.

81.    Though Black attributes the major ice cream manufacturers' incorrect labeling of vanilla to "confusion," there is also strong evidence that the manufacturers did not like the answers on vanilla labeling in ice cream the FDA provided, because this would cut their profit margins.

82.    Daphna Havkin-Frenkel, editor of the *Handbook of Vanilla Science and Technology*, and a leading scholar and researcher on vanilla, summarized the flavoring requirements in the context of ice cream flavored by vanilla:[44]

> There are three categories of vanilla ice cream, as defined by the FDA Standard of Identity. Vanilla ice cream Category I contains only vanilla extract. Vanilla ice cream Category II contains vanilla made up of 1 oz of synthetic vanillin per 1 gallon of 1-fold vanilla extract. Vanilla ice cream Category III contains synthetic ingredients.

83.    Carol McBride, U.S. vanilla category manager for global flavor giant Symrise, noted these requirements and their effect on consumers: "If the flavor comes partially or fully from another source, the company must stamp 'vanilla flavored' or 'artificial vanilla' on the front of the

---

[44] Daphna Havkin-Frenkel and Faith C. Belanger, eds., *Handbook of Vanilla Science and Technology*, Wiley, 2018 (221).

package, a likely turnoff to consumers."[45]

A.  <u>Early Ice Cream Flavoring Debate is "Stirring"</u>

84.  Before formal regulations were enacted, Congressional Hearings from the 1930s offered the legislature the opportunity to state their position on the non-misleading designation of flavors on ice cream products.

85.  Unsurprisingly, the starting point for the debate was how to label vanilla ice cream flavored with added vanillin from clove oil, a natural source material.

86.  Why, the industry, asked Congress, could they not label their products as "vanilla ice cream" if it contained vanillin from sources other than vanilla beans?

87.  In response, Congressmen E.A. Kenny of New Jersey and Virgil Chapman of Kentucky inquired of ice cream's representative, Mr. Schmidt:

Mr. Kenney:   Do you not think, though, Mr. Schmidt, that if you label it vanilla ice cream, it ought to be vanilla; and if it is made with vanillin extracted from oil of cloves, you ought to label it manufactured with such vanillin?

Mr. Schmidt:   Well, we, of course, do not think so. That is why we are here making our protest. We think, after all, the consuming public is accustomed to accepting as vanilla artificial vanillas.

Mr. Kenney:   *We agree that Barnum educated us along that line a long time ago.* (emphasis added)

……………

Mr. Chapman: I do think that if it is chocolate it ought to be labeled "chocolate"; and if it is flavored with vanillin made from oil of cloves, it ought to be labeled to show that it is flavored with vanillin made from oil of cloves; and if it is flavored with vanilla, it ought to be labeled "vanilla"; and if it is " flavored with lemon, it ought to be labeled "lemon "; and if it is cherry, it ought to be labeled "cherry."

88.  Later in the hearing, Mr. Chapman and another industry representative engaged over

---

[45] Melody M. Bomgardner, "The problem with vanilla," Chemical & Engineering News, Sept. 12, 2016.

the proper declaration of flavor for ice cream:

| | |
|---|---|
| Mr. Chapman: | Do you make raspberry? |
| Mr. Hibben: | Yes. |
| Mr. Chapman: | And you put that on the label? |
| Mr. Hibben: | We say "raspberry ice cream." |
| Mr. Chapman: | And if it is peach, you put that on the label? |
| Mr. Hibben: | It Is peach ice cream; yes. |
| Mr. Chapman: | And If you call it vanilla, what do you put on? |
| Mr. Hibben: | We put "vanilla ice cream" on our labels. That is what we want to continue to do. We want to put vanilla on those labels. |
| Mr. Chapman: | But you say you put in It oil of cloves instead of vanilla. |
| Mr. Hibben: | We do not use cloves. We use vanillin derived from the oil of cloves. |
| Mr. Chapman: | If you put out strawberry ice-cream, you would not want to use raspberry to make it, would you? |
| Mr. Hibben: | No; but we use vanillin, which is an ingredient of the vanilla bean and, its true to name. |
| Mr. Chapman: | Is it an extract from the vanilla bean? |
| Mr. Hibben: | It is both. It is taken both from the eugenol and the vanilla bean and is the same product. If you were a chemist you could not tell the difference, and if you were a doctor, you would say that one is just as harmless as the other. |
| Mr. Chapman: | I do not object to buying artificial vanilla ice cream if it is pure, but if it is artificial. I would like to know what I am getting.[46] |

---

[46] One of the reasons for the emphasis on flavor derived from the characterizing flavor was ice cream's status as a high value, expensive product, made mainly from milk and cream.  The use of ersatz flavoring lowered the quality of an otherwise valued item.

89. Even before ice cream standards were established, Congress framed the central question for ice cream flavoring as whether the flavor source was entirely derived from the characterizing flavor – i.e., raspberry for raspberry ice cream, vanilla for vanilla ice cream.

B. Ice Cream Flavoring Regulations

90. The ice cream standard of identity, 21 C.F.R. § 135.110, established in the early 1960s "provided for a system for designating characterizing flavors in ice cream which has come to be referred to as the '3 category flavor labeling.'"  Exhibit A, Letter from Taylor M. Quinn, Associate Director for Compliance, Bureau of Foods, to Glenn P. Witte, International Association of Ice Cream Manufacturers, May 31, 1979 ("Quinn Letter, May 31, 1979").[47]

91. The requirements "recognize[s] three distinct types of ice cream, based on the use of natural and various combinations of natural and various combinations of natural and artificial flavors that characterize this food." Exhibit A, Quinn Letter, May 31, 1979; *see* 21 C.F.R. § 135.110(f)(2)(i)-(iii); 21 C.F.R. § 135.110(f)(3)-(5).

---

[47] The attached exhibits have not previously been available to the public.

**Vanilla Ice Cream Labeling Quick Chart**

| Category | Label Diagram | Flavor Source | Authority (21 C.F.R.) |
|---|---|---|---|
| I | ["characterizing flavor"] + ["ice cream"] → "Vanilla Ice Cream" or "Strawberry Ice Cream" | Vanilla Beans | §135.110(f)(2)(i) |
| II | ["characterizing flavor"] + ["flavored"] + ["ice cream"] → "Vanilla Flavored Ice Cream" or "Peach Flavored Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(ii) |
| III | ["artificial" or "artificially flavored"] + ["characterizing flavor"] + ["ice cream"] → "Artificially Flavored Vanilla Ice Cream" or "Artificially Flavored Strawberry Ice Cream" | Vanilla Beans; Non-Vanilla Beans | §135.110(f)(2)(iii) |

92.    The key distinction between labeling flavors in ice cream compared to other foods is in the meaning of "natural flavor."

93.    In ice cream, "natural flavor" refers to flavor derived only from the characterizing flavor, while "artificial flavor" refers to flavors derived from sources other than the characterizing flavor.

94.    For a category 1 ice cream, which "contains no artificial flavor, the name on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla,' in letters not less than one-half the height of the letters used in the words 'ice cream.'" 21 C.F.R. §135.110(f)(2)(i); *see* Quinn Letter, May 31, 1979 ("the designation of a characterizing flavor for category I ice cream is based on the premise that only natural flavor derived from the product whose flavor is simulated may be used.").

95.    Categories 2 and 3 may contain a natural characterizing flavor and artificial flavor simulating it, but differ based on whether the natural characterizing flavor predominates. *See* 21 C.F.R. §135.110(f)(2)(ii) ("Category II") ("If the food contains both a natural characterizing flavor

and an artificial flavor simulating it, and if the natural flavor predominates"); 21 C.F.R. §135.110(f)(2)(iii) ("Category 3") ("If the food contains both a natural characterizing flavor and an artificial flavor simulating it, and if the artificial flavor predominates"); Exhibit A, Quinn Letter, May 31, 1979 ("The flavor designation for category II ice cream is on the basis that the product contains both natural and artificial flavor, but the natural flavor predominates, whereas in category III the artificial flavor predominates.").

96.     The non-vanilla flavor which simulates the natural characterizing vanilla flavor is deemed to predominate when "the amount of vanillin used is greater than 1 ounce per unit of vanilla constituent." *See* 21 C.F.R. §135.110(f)(5)(i); Exhibit B, Letter from R.E. Newberry, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods, to Daniel P. Thompson, October 30, 1979 ("Newberry Letter, October 30, 1979") (a non-vanilla flavor "is deemed to simulate [resemble or reinforce] vanilla if the addition of the non-vanilla flavor results in a reduction in the amount of vanilla bean derived flavor that would otherwise be used in a vanilla flavored ice cream…such a product would come under category III and have to be labeled as 'artificial vanilla.'").

97.     The requirements – and resulting consumer expectations for almost fifty years – are clear: "the flavor agent for vanilla ice cream (a category I product) is limited to vanilla bean and/or flavor derived from vanilla beans." Exhibit A, Quinn Letter, May 31, 1979.

C.   Differences Between Ice Cream Flavoring and All Other Foods

98.     The flavor regulations for ice creams are separate from the general flavor regulations for other foods. *Compare* 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22; Exhibit A, Quinn Letter, May 31, 1979 ("The general flavor regulations are not applicable to this standardized food.").

99.    The ice cream flavor designations were "established long before the development of the general flavor regulations published under 21 CFR 101.22." Exhibit C, Letter from J.L. Summers, Assistant to the Director, Division of Regulatory Guidance, Bureau of Foods to David B. Daugherty, Zink & Triest Company, Inc., April 10, 1979   ("Summers Letter, April 10, 1979") ("Consequently, the labeling requirements for the declaration of flavors in the name of ice cream are specifically provided for by the standard and is separate and apart from the general flavor regulations.").[48]

100.    For the purposes of designating the type of ice cream on the front label, whether a flavor complies with the general definition of natural flavor in other regulations has no relevance. Exhibit C, Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category I ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans."); Exhibit A, Quinn Letter, May 31, 1979 ("It is our understanding that there are available in the market place, natural flavoring compounds that resemble, simulate and/or enhance vanilla flavor but are not derived from vanilla bean.  These flavor compounds would not comply with the intent of the flavor provisions of Category I ice cream").

101.    This is because 21 C.F.R. § 135.110(f) "makes no provision for any natural flavors other than natural characterizing flavors."  Exhibit D, Advisory Opinion to attorneys for FEMA and David Michael & Co., Inc., from Joseph Hile, Associate Commissioner for Regulatory Affairs, February 9, 1983 at 9 ("Advisory Opinion, February 9, 1983") ("FDA must treat all natural flavors that simulate the characterizing flavor as artificial flavors when deciding what name should appear on the principal display panel").[49]

---

[48] Compare 21 C.F.R. § 135.110(f)(2)-(5) with 21 C.F.R. § 101.22; J.L Summers personally confirmed the contents of his correspondence indicated here to plaintiff's counsel.
[49] 21 C.F.R. § 135.110(f) was previously 21 C.F.R. § 135.110(e).

102. At best, "[N]atural flavors not derived from vanilla beans may be used in combination with the standardized items included under 21 CFR 169 (vanilla-vanillin extract or vanilla-vanillin flavoring) for category II vanilla flavored ice cream provided that the flavoring contributed by or derived from the vanilla beans predominates" and they are fully disclosed as same. Exhibit E, Letter from Taylor M. Quinn to Kenneth Basa, National Food Ingredient Company, August 22, 1979 ("Quinn Letter, August 22, 1979"); Exhibit F,

D. Identifying Flavors on Ice Cream Ingredient List

103. Ice cream ingredients are required to be identified "as required by the applicable sections of parts 101 and 130" of the regulations. *See* 21 C.F.R. § 135.110(g).

104. Because vanilla extract and vanilla flavoring are defined by standards of identity, they must be declared on the ingredient list with these names. *See* 21 C.F.R. § 101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food, including foods that comply with standards of identity, except those ingredients exempted by 101.100, shall be listed by common or usual name.").

105. Because ice cream is a standardized food and the vanilla ingredients are subject to their own standards of identity, the designation of these vanilla ingredients is further supported by 21 U.S.C. §343(g):[50]

A food shall be deemed to be misbranded –

(g) Representation as to definition and standard of identity

If it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provided by section 341 of this title, unless (1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard, and, insofar as may be required by such regulations, the common names of optional ingredients (other than

---

[50] 21 U.S.C. § 343(g)(2) read with 21 C.F.R. § 135.110(f)(2)(i) and 21 C.F.R. §§ 169.175 – 169.178.

spices, flavoring, and coloring) present in such food.

106.   If an exclusively vanilla ingredient is used, it is designated on the ingredient list by its common or usual name provided by its standard of identity. *See* 21 C.F.R. § 169.175(b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'."); *see also* 21 C.F.R. § 169.177(b) ("The specified name of the food is 'Vanilla flavoring.'").

107.   "Natural flavor" is not a "common or usual name" but a technical term defined as "the essential oil, oleoresin, essence or extractive…which contains the flavoring constituents" from a natural source such as plant material. *See* 21 C.F.R. § 101.22(a)(3).

108.   "Natural flavor" is used to designate flavoring when multiple flavors are combined.

109.   "Artificial flavor" in contrast is any substance whose function is to impart flavor that is not derived from a natural source. *See* 21 C.F.R. § 101.22(a)(1).

IV.   Misleading and Contrary to Law to Replace Vanilla in Modified Vanilla Ice Creams[51]

110.   Modified versions of ice cream are expected to vary based on their level or range of nutrients such as fat, sugar and calories, instead of the amount and composition of the flavoring.

111.   Nutrient content claims modify the term "ice cream" by adjusting the nutrient composition of the Products – "light ice cream" as opposed to "light vanilla."

112.   No basis exists to reduce the amount or proportion of vanilla in a modified ice cream because the vanilla ingredients are not nutrients, but flavorings.

113.   Vanilla extract and vanilla flavorings are insignificant sources of calories, fat, sugar and other nutrients which are subject to express nutrient content claims.

114.   A company can easily produce a modified ice cream with less vanilla, since they may label it "vanilla flavored" or in another authorized way.

---

[51] 21 CFR § 130.10 – Requirements for foods named by use of a nutrient content claim and a standardized term.

115.   The amount and proportion of vanilla used has no functional or technical effect on those aspects of the food which are modified by the nutrient content claim.[52]

V.   Front Panel and Ingredient List Nomenclature in Vanilla Ice Cream

A.   Varieties of "Natural Flavor" Used as Ingredients in Vanilla Ice Cream

116.   "Natural flavor" in the context of vanilla products refers to a combination of vanilla with non-vanilla flavors.

117.   One of these is called "vanilla with other natural flavors."

118.   The "other natural flavors" generally consist of "natural vanillin" and/or non-vanilla natural flavors such as maltol or piperonal.

119.   Where a vanilla ice cream is flavored with a vanilla WONF containing added "natural vanillin," it no longer qualifies as Category 1 because vanillin has always been "artificial" when compared with real vanilla. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

120.   Where a vanilla ice cream is flavored with vanilla WONF, it no longer can be labeled as such because "the standard for ice cream does not provide for the label designation of 'With other [natural] flavors' (WONF)."  *see* Exhibit C, Summers Letter, April 10, 1979 ("A product identified as 'Vanilla Ice Cream' is subject to the category 1 ice cream requirements and, therefore, must contain only the characterizing flavor derived from vanilla beans").

B.   "Vanilla Flavor, Natural Flavor" in Vanilla Ice Cream

VI. The Products are Misleading Because they Contain Non-Vanilla Flavor and/or Components

---

[52] 21 C.F.R. § 130.10(d)(2), 21 C.F.R. § 130.10(d)(3) ("An ingredient or component of an ingredient that is specifically prohibited by the standard as defined in parts 131 through 169 of this chapter, shall not be added to a substitute food under this section."); 21 C.F.R. § 130.10(d)(4).

121.   The designation of a type of ice cream as "Vanilla" is understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is derived from vanilla extract or vanilla flavoring and unexhausted vanilla beans, (4) no other flavors simulate, resemble, reinforce, or enhance flavoring from vanilla or permit less real vanilla to be used and (5) vanilla is the exclusive source of flavor.

122.   The ingredient list reveals the Product's flavoring ingredient is "Natural Flavor."

<u>Ingredient List</u>

Vanilla Reduced Fat Ice Cream

Ingredients: Milk, Sugar, Cream, Corn Syrup, Natural Flavor, Mono and Diglycerides, Cellulose Gum, Guar Gum, Carrageenan, Vitamin A Palmitate.

Ingredients: Milk, Sugar, Cream, Corn Syrup, Natural Flavor, Mono and Diglycerides, Cellulose Gum, Guar Gum, Carrageenan, Vitamin A Palmitate.

123.   For the above-described reasons, the Product's "Natural Flavor" is not exclusively vanilla and contains non-vanilla flavors which extend, simulate, enhance and resemble vanilla.

124.   The Product's representations are misleading because it gives the impression it is flavored only from the characterizing vanilla flavor, though it includes flavor not derived from vanilla beans.[53]

VII.   Conclusion

125.   Defendant's representations of the Product is designed to – and does – deceive, mislead, and defraud consumers.

126.   Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

---

[53] 21 C.F.R. § 135.110(f)(2)(i).

127. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

128. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

129. Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

130. The Product contains other representations which are misleading and deceptive.

131. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $1.99 per cone, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

132. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

133. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

134. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

135. This is a reasonable assumption because defendant's Products are sold in thousands of stores across the country and have been sold bearing the allegedly misleading claims for at least three years.

136. Defendant is a Delaware corporation with a principal place of business in Chicago,

Cook County, Illinois and is a citizen of Illinois.

137.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

138.   Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

139.   A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

140.   Plaintiff is a citizen of Yonkers, Westchester County, New York.

141.   Defendant McDonald's Corporation is a Delaware corporation with a principal place of business in Chicago, Illinois, Cook County.

142.   During the relevant statutes of limitations, plaintiff purchased, used or consumed the Product within this district and/or State for personal consumption or use in reliance on the representations.

Class Allegations

143.   The classes will consist of all purchasers of the Product in New York, the other 49 states and a nationwide class, during the applicable statutes of limitations.

144.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

145.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

146.   Plaintiff is an adequate representative because her interests do not conflict with other

members.

147.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

148.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

149.  Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

150.  Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

151.  Plaintiff incorporates by reference all preceding paragraphs.

152.  Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

153.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

154.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

155.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

156.  Plaintiff  and class members would not have purchased the Products or paid as much

if the true facts had been known, suffering damages.

Negligent Misrepresentation

157.  Plaintiff incorporates by reference all preceding paragraphs.

158.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

159.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

160.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

161.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

162.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

163.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

164.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>

165.   Plaintiff incorporates by reference all preceding paragraphs.

166.   The Products were manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

167.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

168.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

169.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

170.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

171.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

172.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

173.   Plaintiff incorporates by references all preceding paragraphs.

174.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

175.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.

176.  Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

177.  Plaintiff incorporates by reference all preceding paragraphs.

178.  Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.   Other and further relief as the Court deems just and proper.

Dated:   March 8, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-02058
United States District Court
Southern District of New York

Emelina Webber, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

McDonald's Corporation,

Defendant

## Class Action Complaint

```
       Sheehan & Associates, P.C.
       505 Northern Blvd Ste 311
       Great Neck NY 11021-5101
          Tel: (516) 303-0552
          Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 8, 2020

/s/ Spencer Sheehan
Spencer Sheehan