

**Sarah L. Brew**
Partner
sarah.brew@faegredrinker.com
+1 612 766 7470 direct

Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
+1 612 766 7000 main
+1 612 766 1600 fax

faegredrinker.com

October 27, 2020

**VIA ECF**

The Honorable Kenneth M. Karas
U.S. District Court for the Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4150

    Re:    *Webber v. McDonald's Corporation*, No. 7:20-cv-02058 (S.D.N.Y.)

Dear Judge Karas:

    This firm represents the defendant in this action ("McDonald's"). We are writing under section II.A of Your Honor's Individual Rules of Practice to request a pre-motion conference regarding McDonald's anticipated motion to dismiss the First Amended Complaint ("FAC").

    Plaintiff Emelina Webber alleges that the marketing and so-called "labeling" of McDonald's soft serve Vanilla Cones (the "Product") is false and misleading because "the Product is not flavored only through use of vanilla beans, and the amount of vanilla is less than consumers expect" (FAC ¶ 27), despite the Product being sold at a "premium price" of $1.69 per cone (*id.* ¶ 55). She seeks to represent a class of New York consumers who purchased the Product (*id.* ¶ 73) and asserts claims for violation of New York General Business Law Sections 349 and 350, negligent misrepresentation, breach of warranty, fraud, and unjust enrichment (*id.* ¶¶ 82-110).

    This is one of more than 90 nearly identical cases that Plaintiffs' counsel has filed challenging the labeling of vanilla-flavored products.[1] This case is unique, however, in that it involves a product served in quick-service restaurants and, therefore, not subject to the FDA food labeling requirements for consumer packaged goods. Despite McDonald's explaining this critical distinction, Plaintiff continues to cite and rely on the FDA labeling regulations. (*See id.* ¶¶ 18-25.)

    Although the FAC repeatedly references the Product's "label," the Product does not have a label. Instead, the product is displayed on some McDonald's menu boards in restaurants and

---

[1] Three such cases are pending before Your Honor, each involving ice cream products: *Dashnau v. Unilever Mfg. (US), Inc.*, No. 7:19-cv-10102 (S.D.N.Y.); *Falborn v. Unilever United States, Inc.*, No. 7:20-cv-04138 (S.D.N.Y.); and *Magnuson v. The Price Chopper, Inc.*, No. 7:20-cv-07497 (S.D.N.Y.).

Honorable Kenneth M. Karas                - 2 -                              October 27, 2020

drive-thru locations and on some self-order kiosks. The FAC includes an image from a McDonald's self-order kiosk, which shows what some consumers see before ordering the Product.

 (FAC at 2.)

But other consumers, ordering from some menu boards displayed in McDonald's restaurants or at drive-thrus, would have seen only "Cone" plus the price and calories. We do not know which Plaintiff saw because the FAC is devoid of any information about when or how she purchased the Product, what she saw before placing an order, or the price she paid.

      Still, Plaintiff alleges that the word "Vanilla" on some of the McDonald's menus "gives consumers the impression that all of the vanilla taste is from vanilla beans." (*Id.* ¶ 50.) This theory is utterly implausible. Reasonable consumers ordering soft serve from a quick-service restaurant for less than two dollars know that "vanilla" refers to the Product's **flavor** and is not a representation of its ingredients. The Products are in fact vanilla flavored and contain natural vanilla, as Plaintiff concedes. (*See id.* ¶ 40.) That is all a reasonable consumer would expect.

      In fact, a court in this district recently granted a motion to dismiss in a similar case, also brought by Plaintiff's counsel, that challenged the "vanilla" labeling of *packaged* ice cream with "natural flavors." *Steele v. Wegmans Food Markets, Inc.*, --- F. Supp. 3d ----, 2020 WL 3975461, at *2 (S.D.N.Y. July 14, 2020). The Court concluded that the "vanilla" statement on the label would not deceive a reasonable consumer as a matter of law because "vanilla" was a description of *flavor*, not a claim that the source of the "natural flavor" was vanilla beans or vanilla extract.

      That legal conclusion applies equally here, as is vividly confirmed by consumers' responses to Plaintiff's counsel's Facebook post: "*Does your Vanilla Soft Serve Ice Cream contain real vanilla? Not according to class-action lawsuits and investigations.*" Of the many comments

visible on July 7, 2020, **none** supports Plaintiff's allegation that consumers think "vanilla" means the Product's vanilla flavor is "derived exclusively from vanilla extract or vanilla flavoring sourced from unexhausted vanilla beans," instead of simply denoting the Product's vanilla flavor. The overwhelming majority of comments reject or ridicule that proposition, as explained in a letter sent to Plaintiff's counsel on July 16, 2020, which is attached as Exhibit 1 to this letter.

McDonald's explained all of this, along with the various bases on which it intends to move to dismiss, in its July 31, 2020 pre-motion letter regarding the original Complaint. In response to that letter, Plaintiff amended her complaint. But rather than addressing the fundamental legal and factual flaws with her claim, Plaintiff's FAC merely adds vague, unsupported allegations that she conducted some kind of "consumer survey" and some chemical analyses. Neither allegation can save Plaintiff's baseless claims.

The purported "consumer survey" that Plaintiff commissioned does change the analysis. As the Ninth Circuit recently held, a consumer survey cannot salvage a claim that is otherwise implausible. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019). Inexplicably, Plaintiff's counsel did not attach a copy of the survey instrument to the FAC and refused to provide a copy when McDonald's counsel requested it. (Exhibit 2, Declaration of Sarah Brew ¶ 3.) Thus, McDonald's and the Court have only Plaintiff's vague, conclusory allegations about the survey, not the survey itself. Without it, neither McDonald's nor the Court can evaluate whether the survey even potentially supports Plaintiff's allegations about "reasonable consumers."

In any event, the allegations about the consumer survey *do not support Plaintiff's theory*. The FAC alleges only that survey respondents "expected the Product's vanilla taste to come from vanilla beans" (FAC ¶ 26), which Plaintiff concedes it does (*id.* ¶ 40). But the survey does not allege that respondents agreed with the second component of Plaintiff's theory: that the vanilla taste comes *exclusively* or *predominantly* from vanilla beans. *See Yu v. Dr Pepper Snapple Group, Inc.*, 2020 WL 5910071, at *6 (N.D. Cal. Oct. 6, 2020) (holding that consumer survey did not fit plaintiff's theory and thus did not help plaintiff allege a plausible claim).

The alleged chemical analysis of the Product cannot salvage Plaintiff's claims, either. According to Plaintiff, the analysis shows that the Product contains vanilla as well as vanillin from non-vanilla sources. (FAC ¶¶ 32-33.) Even assuming that is true, it does not support Plaintiff's implausible theory that a *reasonable consumer* understands "Vanilla" in this context to mean that the Product's vanilla flavor comes *exclusively* from vanilla beans.

Because Plaintiff's theory is fundamentally wrong, McDonald's intends to move to dismiss on the following grounds.

Honorable Kenneth M. Karas   - 4 -   October 27, 2020

## I. The FDA Regulations Cited in the FAC Are Inapplicable and Irrelevant.

As an initial matter, the FAC's discussion of FDA regulations and a trade journal article purporting to interpret them is irrelevant to the Product and Plaintiff's claims. The Product does not, of course, have a package or label and, in any event, these regulations do not apply to food served in quick-service restaurants like McDonald's. *See* 21 C.F.R. § 101.9(j)(2)(i)-(ii) (exempting foods "served in restaurants" or "in other establishments in which food is served for immediate human consumption" including "ice cream shops"); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 537 (S.D.N.Y. 2003).[2]

Even if the regulations applied to the Product, they would be "without consequence" for Plaintiff's claims because she cannot privately enforce FDA regulations under the guise of a consumer fraud action. *Steele*, 2020 WL 3975461, at *2 (citing *PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997)).

Finally, FDA's complex and technical requirements for flavor labeling do not shed light on whether a reasonable consumer, not versed in FDA regulations, would be deceived. The reasonable-consumer test considers context and common sense, not the Code of Federal Regulations. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190-91 (E.D.N.Y. 2018) (even assuming a technical violation of the FDA slack-fill regulations, no reasonable consumer would be misled, in part because "consumers have come to expect at least some slack-fill").

## II. The FAC Fails to State a Claim Under NY GBL Section 349 or 350.

"To successfully assert a claim under either [Section 349 or 350], a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Here, Plaintiff has not satisfied the second or third elements.

### a. McDonald's use of the term "vanilla" is not deceptive.

Under New York law, a representation is materially misleading only when a "a reasonable consumer acting reasonably under the circumstances" would be misled. *Id.* "The Second Circuit has explained that 'in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.'" *Rivas v. The Hershey Co.*, No. 19-CV-03379, 2020

---

[2] The only FDA "labeling" regulations applicable to restaurants are the menu-labeling regulations. *See* 21 C.F.R. § 101.9(j). But those regulations require only that calories be disclosed and certain other nutritional information be posted or available upon request; they do not incorporate or require compliance with the regulations cited in the FAC. *See* 21 C.F.R. § 101.11.

WL 4287272, at *5 (E.D.N.Y. July 27, 2020) (quoting *Geffner v. CocaCola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)). This standard requires a showing of "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." *Williams v. Burger King Corp.*, 2020 WL 5083550, at *5 (S.D. Fla. July 20, 2020) (dismissing claims, including under NY GBL §§ 349 and 350, because reasonable consumers understood that Burger King promised a meatless patty, not "something more," *i.e.*, a meatless patty cooked on a separate grill).

As discussed above, a reasonable consumer ordering a "Vanilla Cone" for less than two dollars at McDonald's understands from experience and context that the term "vanilla" on the menu board denotes the soft serve *flavor*, not necessarily the ingredients. When consumers order "pistachio," "strawberry," or "spumoni" ice cream, for example, they understand that those terms refer to flavors, not necessarily ingredients. No reasonable consumer would assume that the flavor of McDonald's "Vanilla Cone" is solely derived from vanilla extract or vanilla beans. *See Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (no reasonable consumer would believe a "Steak & Egg Breakfast Sandwich" contained an "intact" cut of meat, in part due to familiarity with "[c]lassic examples of ground beef served as 'steak,'" such as "chopped steak, hamburger steak, and Salisbury steak"); *Steele*, 2020 WL 3975461, at *2 (concluding as a matter of law that "vanilla" ice cream label is not deceptive); *Rivas*, 2020 WL 4287272, at *5 (not plausible that a reasonable consumer would think "Kit Kat White" bars contained white chocolate).

As explained above (*supra* at 3), neither Plaintiff's conclusory consumer survey allegations nor her alleged chemical analyses affects this fundamental, common-sense conclusion.

### b. Plaintiff has not adequately alleged an injury.

Plaintiff cannot satisfy the injury element of NY GBL Sections 349 and 350 because she has not alleged that she "did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. Plaintiff asserts that McDonald's sells the Product for a price premium (*see* FAC ¶ 55) without alleging any supporting facts, such as the amount she actually paid, the alleged price premium, or examples of comparable products with a lower price. Courts routinely reject similar conclusory allegations of price premium as insufficient to allege injury. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).

### III. Plaintiff's Other Claims Fail as a Matter of Law.

Plaintiff's negligent misrepresentation claim fails because the FAC does not allege any "special relationship" between Plaintiff and McDonald's, *see Izquierdo*, 2016 WL 6459832, at *8 (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)), and because the claim is barred by the economic-loss doctrine, *see Elkind v. Revlon Consumer Prods., Inc.*, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015).

Plaintiff's express and implied warranty claims fail for several reasons. First, Plaintiff did not provide the pre-suit notice required under New York law. *See Colella*, 348 F. Supp. 3d at 143. Second, Plaintiff has not plausibly alleged that she is in privity with McDonald's because some McDonald's restaurants are franchised, and Plaintiff has not specifically identified the McDonald's restaurant(s) where she purchased the Product. *See Landtek Group Inc. v. N. Am. Specialty Flooring Inc.*, 2016 WL 11264722, at *35 (E.D.N.Y. 2016). Third, Plaintiff has not alleged that the Product is unfit for human consumption, as required for a breach of implied warranty claim. *See Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015).

The Magnuson-Moss Warranty Act ("MMWA") claim fails because "vanilla" is not a warranty under the MMWA, *see In re Frito-Lay N. Am. Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013), and because a MMWA claim must be dismissed if a plaintiff's state-law warranty claims are dismissed, *see In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016).

The common law fraud claim fails because Plaintiff has not pleaded it with the required particularity, *see* Fed. R. Civ. P. 9(b), and has not alleged facts that "give rise to a strong inference of fraudulent intent," *see Davis v. Yeroushalmi*, 985 F. Supp. 2d 349, 359 (E.D.N.Y. 2013).

Finally, Plaintiff's unjust enrichment claim fails because it either duplicates or replaces her other claims. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012).

### IV. Plaintiff Lacks Standing to Seek Injunctive Relief.

Plaintiff lacks standing to pursue her request for injunctive relief because, having discovered the "truth" about the Product (so she claims), Plaintiff is unlikely to purchase the Product or be deceived by its marketing or "labeling" in the future. *See Kommer v. Bayer Consum. Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017), *aff'd,* 710 F. App'x 43 (2d Cir. 2018); *see also Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020).

For all these reasons, McDonald's intends to move to dismiss the FAC.

Respectfully submitted,

Sarah L. Brew