## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Emelina Webber, individually and on behalf of all others similarly situated, | 7:20-cv-02058 (KMK) |
| Plaintiff, | |
| vs. | ORAL ARGUMENT REQUESTED |
| McDonald's Corporation, | |
| Defendant. | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

FAEGRE DRINKER BIDDLE & REATH LLP

Sarah L. Brew (admitted *pro hac vice*)
Tyler A. Young (admitted *pro hac vice*)
Rory F. Collins (NY Bar. No. 5549670)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
sarah.brew@FaegreDrinker.com
tyler.young@FaegreDrinker.com
rory.collins@FaegreDrinker.com

Lucas B. Michelen
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
Telephone: (212) 248-3140
Fax: (212) 248-3141
lucas.michelen@FaegreDrinker.com

*Attorneys for Defendant McDonald's Corporation*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND AND STATEMENT OF FACTS ......................................................... 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

   I.   Plaintiff's Claims Fail Because McDonald's Use of the Term "Vanilla" Is Not
      Materially Misleading to Reasonable Consumers. ................................................... 5

       A.   The Product Tastes Like Vanilla, and That Is All a Reasonable Consumer
           Would Expect Based on McDonald's Description. ................................................. 6

       B.   The FDA Regulations Cited in the Complaint Are Inapplicable and
           Irrelevant. ................................................................................................................. 8

       C.   Plaintiff's Support for Her Understanding of Consumer Expectations Is
           Not Sufficient to Establish a Plausible Claim of Deception. ............................. 10

       D.   Plaintiff's GC-MS Test Results Are Unreliable and Immaterial to the
           Claims. .................................................................................................................... 11

       E.   Plaintiff's Allegation that the Product Should Be Labeled "Artificially
           Flavored" Is Incorrect and Inconsequential. ..................................................... 13

       F.   Plaintiff's Unpleaded Theory that the Product Does Not Actually Taste
           Like Vanilla Cannot Save Her Claims. ................................................................ 13

   II.   The GBL Claim Also Fails Because Plaintiff Has Not Plausibly Alleged that
      She Paid a Price Premium. ...................................................................................... 14

   III.   Plaintiff's Ancillary Claims Also Fail as a Matter of Law for Additional
      Reasons. ..................................................................................................................... 15

       A.   Plaintiff's Negligent Misrepresentation Claim Fails for Lack of a "Special
           Relationship." ......................................................................................................... 16

       B.   Plaintiff's Warranty Claims Fail for Multiple Reasons. ..................................... 17

       C.   The Fraud Claim Fails Because Plaintiff Has Not Alleged Facts Giving
           Rise to a Strong Inference of Fraudulent Intent. ................................................ 20

       D.   The Unjust Enrichment Claim Should Be Dismissed as Duplicative. ................ 21

   IV.   Plaintiff Lacks Standing to Seek Injunctive Relief Because She Cannot
      Demonstrate a Likelihood of Future Injury. ......................................................... 22

   V.   Plaintiff's Claims Should Be Dismissed with Prejudice. ...................................... 23

CONCLUSION ................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Amadei v. Nielsen*,
  348 F. Supp. 3d 145 (E.D.N.Y. 2018) .......................................................................4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................4, 10, 12

*Barreto v. Westbrae Natural, Inc.*,
  2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) (Castel, J.) ...............................................1, 7, 24

*BASF Wyandotte Corp. v. Costle*,
  598 F.2d 637 (1st Cir. 1979).......................................................................................12

*Bassaw v. United Indus. Corp.*,
  2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020)....................................................18, 19, 20

*Bautista v. CytoSport, Inc.*,
  223 F. Supp. 3d 182 (S.D.N.Y. 2016)........................................................................16, 23

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ...................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).....................................................................................................4, 10, 12

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020).......................................................................................23

*Borenkoff v. Buffalo Wild Wings, Inc.*,
  2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ...............................................................15

*Bowling v. Johnson & Johnson*,
  65 F. Supp. 3d 371 (S.D.N.Y. 2014)...........................................................................20

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005)........................................................................................9

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York*,
  2009 WL 928718 (E.D.N.Y. Mar. 31, 2009)...............................................................20

*Bush v. Mondelez Int'l, Inc.*,
  2016 WL 7324990 (N.D. Cal. Dec. 16, 2016).............................................................9

*Campbell v. Freshbev LLC*,
  322 F. Supp. 3d 330 (E.D.N.Y. 2018) ........................................................................6

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)................................................................5

*Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020)................................................................6

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)................................................................20

*Clark v. Westbrae Natural, Inc.*,
    2020 WL 7043879 (N.D. Cal. Dec. 1, 2020)....................................1, 7, 11, 24

*Coal. for a Level Playing Field, LLC v. Autozone, Inc.*,
    813 F. Supp. 2d 557 (S.D.N.Y. 2011)................................................23

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 120 (E.D.N.Y. 2018) ............................................15, 18

*Cosgrove v. Blue Diamond Growers*,
    2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ....................................1, 7, 24

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014)................................................................16

*DaCorta v. AM Retail Grp., Inc.*,
    2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ......................................15

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003)................................................................16

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ..............................................9

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ............................................5, 23

*Elkind v. Revlon Consumer Prod. Corp.*,
    2015 WL 2344134 (E.D.N.Y. May 14, 2015) ..................................17

*Fallman v. Hotel Insider Ltd*,
    2016 WL 316378 (S.D.N.Y. Jan. 15, 2016) ....................................16

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)................................................................5

*Geffner v. Coca-Cola Co.*,
    928 F.3d 198 (2d Cir. 2019)........................................................5, 6, 15

*Gordon v. Hain Celestial Grp., Inc.*,
   2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ....................................................................17

*Greene v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ...............................................................................17

*Hawyuan Yu v. Dr Pepper Snapple Group, Inc.*,
   2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)....................................................................10

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)............................................................18, 20

*In re Gen. Motors LLC Ignition Switch Litig.*,
   2016 WL 3920353 (S.D.N.Y. July 15, 2016) ..................................................................19

*In re Lyman Good Dietary Supplements Litig.*,
   2018 WL 3733949 (S.D.N.Y. Aug. 6, 2018)....................................................................21

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)............................................................15, 16

*Jones v. Welch Foods Inc.*,
   2020 WL 7024343 (E.D.N.Y. Nov. 30, 2020)..................................................................23

*Kennedy v. Mondelez Glob. LLC*,
   2020 WL 4006197 (E.D.N.Y. July 10, 2020)..............................................................12, 23

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).................23

*Lugones v. Pete & Gerry's Organic, LLC*,
   440 F. Supp. 3d 226 (S.D.N.Y. 2020)..............................................................................18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................................22

*Mahoney v. Endo Health Sols., Inc.*,
   2016 WL 3951185 (S.D.N.Y. July 20, 2016) ..................................................................17

*Marini v. Adamo*,
   644 F. App'x 33 (2d Cir. 2016) .......................................................................................22

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2nd Cir. 2007)..........................................................................................23

*Melendez v. ONE BRANDS, LLC*,
   2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020).............................................................18, 22

iv

*N. Am. Olive Oil Ass'n v. Kangadis Food, Inc.*,
    962 F. Supp. 2d 514 (S.D.N.Y. 2013)...................................................................11

*Nelson v. MillerCoors, LLC*,
    246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................................22

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
    910 F.3d 293 (7th Cir. 2018) ...............................................................................21

*Newton v. Kraft Heinz Foods Co.*,
    2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ..........................................19, 20

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)................................................................................22

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015).....................................................................5, 14, 15

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997)................................................................................9

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003)...................................................................8

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ........................................... passim

*Red Fort Capital, Inc v. Guardhouse Prods. LLC*,
    397 F. Supp. 3d 456 (S.D.N.Y. 2019)................................................................13

*Reyes v. Crystal Farms Refrigerated Distribution Co.*,
    2019 WL 3409883 (E.D.N.Y. July 26, 2019)....................................................13

*Rodriguez v. Hanesbrands Inc.*,
    2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018).....................................................21

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996).................................................................................20

*Sarr v. BEF Foods, Inc.*,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020)............................................ passim

*Silva v. Hornell Brewing Co.*,
    2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020).....................................................20

*Silva v. Smucker Nat. Foods, Inc.*,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .............................................18, 19

*Steele v. Wegmans Food Markets, Inc.*,
  472 F. Supp 3d 47, 50 (S.D.N.Y. 2020) ........................................................... passim

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ................................................. 16

*Tomasino v. Estee Lauder Cos.*,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ............................................................... 18

*Verzani v. Costco Wholesale Corp.*,
  2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir.
  2011) .................................................................................................................. 9

*Waxman v. Cliffs Nat. Res. Inc.*,
  222 F. Supp. 3d 281 (S.D.N.Y. 2016) ............................................................. 21

*Weisblum v. Prophase Labs, Inc.*,
  88 F. Supp. 3d 283 (S.D.N.Y. 2015) ............................................................... 17

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ......................................................................................... 22

*Wu v. Good Samaritan Hosp. Med. Ctr.*,
  2019 WL 2754865 (E.D.N.Y. July 2, 2019), *aff'd*, 815 F. App'x 575 (2d Cir.
  2020) .................................................................................................................. 12

STATE CASES

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012) .......................................................................... 21

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
  958 N.E.2d 77 (N.Y. 2011) .............................................................................. 16

*Kimmell v. Schaefer*,
  675 N.E.2d 450 (N.Y. 1996) ............................................................................ 16

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. 2011) .......................................................................... 17

*Vamos v. Coca-Cola Bottling Co. of New York*,
  627 N.Y.S.2d 265 (Civ. Ct. 1995) ................................................................... 19

FEDERAL STATUTES

15 U.S.C. § 2301 .................................................................................................. 19, 20

15 U.S.C. § 2310 .................................................................................................. 19

**STATE STATUTES**

New York General Business Law §§ 349 and 350.......................................................... passim

**RULES**

Fed. R. Civ. P. 12(b)(1) ............................................................................................4, 22

Fed. R. Civ. P. 12(b)(6) ...............................................................................................4

**REGULATIONS**

21 C.F.R. § 101.9.......................................................................................................8, 9

21 C.F.R. § 101.11.........................................................................................................9

21 C.F.R. § 135.110.....................................................................................................13

## INTRODUCTION

Plaintiff Emelina Webber admits that McDonald's "vanilla" soft serve cone (the "Product") tastes like and contains vanilla. Yet she claims that by describing the Product as "vanilla"—*e.g.*, calling it a "Vanilla Cone"—McDonald's misleads consumers into believing that its vanilla flavor comes ***exclusively*** from vanilla beans. This is utterly implausible.

Nonetheless, Plaintiff's counsel, Mr. Sheehan, has filed approximately *110 lawsuits* over the past 18 months asserting substantially the same claim against other vanilla-flavored foods and beverages. Mr. Sheehan filed most of these cases in New York but has recently filed several cases in California. For example, after McDonald's filed its pre-motion letter regarding Plaintiff's original complaint in this case, he filed a nearly identical case in the Northern District of California. *Harris v. McDonald's Corp*., Case No. 3:20-cv-06533 (N.D. Cal. Sept. 17, 2020).

In a string of recent decisions, courts have dismissed these "vanilla" claims for the fundamental reason that no reasonable consumer would interpret "vanilla" statements on a product in the way Plaintiff claims she did. *See Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp 3d 47, 50 (S.D.N.Y. 2020) (Stanton, J.); *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020) (Caproni, J.); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *4 (S.D.N.Y. Dec. 7, 2020) (Marrero, J.); *Barreto v. Westbrae Natural, Inc.*, 2021 WL 76331, at *9 (S.D.N.Y. Jan. 7, 2021) (Castel, J.); *Clark v. Westbrae Natural, Inc.*, 2020 WL 7043879, at *3-4 (N.D. Cal. Dec. 1, 2020). This case is essentially no different than these other "vanilla" cases and should be dismissed for the same reason: no reasonable consumer would be misled by the term "Vanilla" on some McDonald's menu boards.[1]

---

[1] That conclusion is vividly confirmed by consumers' responses to Mr. Sheehan's firm's Facebook post: "*Does your Vanilla Soft Serve Ice Cream contain real vanilla? Not according to class-action lawsuits and investigations.*" As McDonald's noted in its pre-motion letter, of the many comments visible on July 7, 2020, *none* support Plaintiff's allegation that consumers think "vanilla" means the Product's vanilla flavor is derived exclusively from the vanilla plant, instead

Plaintiff's claims also fail for additional reasons. The New York General Business Law

("GBL") claim fails because Plaintiff has not plausibly alleged that she suffered an actual injury

caused by McDonald's use of the term "vanilla." In addition, the common-law claims are

inadequately pleaded. Finally, if any claim were to survive, Plaintiff lacks standing to pursue her

request for injunctive relief because, having discovered the alleged "truth" about the Product, she

does not face imminent risk of future injury.

Plaintiff already amended her complaint once, and the parties have submitted two rounds

of pre-motion letters. Plaintiff has not corrected the fundamental flaws in her pleading because

she cannot. Enough is enough. The Court should dismiss all of Plaintiff's claims with prejudice.

## BACKGROUND AND STATEMENT OF FACTS

Although the First Amended Complaint ("FAC") repeatedly references the Product's

"labeling," McDonald's soft serve vanilla cone—unlike the products that have been the target of

many of Mr. Sheehan's lawsuits—does not have a label. Instead, the Product is displayed on

some McDonald's menu boards in restaurants and drive-thru locations and on self-order kiosks.

The way the Product is presented varies by location. The menu boards at some McDonald's

restaurants do not mention the Product's flavor at all—they simply list "Cone," along with the

price and calories. At other locations, the menu boards list "Vanilla Cone." The Complaint

includes the following image of a "Vanilla Cone" from a McDonald's self-order kiosk, which

---

of simply denoting the Product's vanilla flavor. The overwhelming majority of comments reject
or ridicule that proposition, on which this lawsuit is based. (*See* ECF No. 24-1 at 8-12.)

shows what some consumers see before buying the Product. (FAC, ECF No. 21, at 2.[2])



Plaintiff does not allege that McDonald's makes any other representations about vanilla and the Product—for example, there are no images of vanilla beans and no statement that the Product is "made with vanilla." Even consumers who seek out the Product's ingredient list online will not find another reference to vanilla, only "Natural Flavor." (*Id.* ¶ 29 (reproducing the Product's ingredient list as shown on McDonald's website).)

Plaintiff claims that the "Vanilla" in "Vanilla Cone" "leads consumers to believe that it is flavored only with vanilla." (*Id.* ¶ 8.) She alleges that this "representation" is misleading because, according to the purported results of a gas chromatography-mass spectrometry ("GC-MS") analysis commissioned by her counsel, the Product contains added vanillin[3] from non-vanilla sources. (*Id.* ¶¶ 40-41.) Plaintiff does not dispute that the Product contains vanilla—in fact, she implicitly concedes that it does. (*See id.*) Rather, she complains that the Product contains "less

---

[2] A copy of the FAC is attached as Exhibit 1.
[3] Vanillin is the main flavor component of vanilla. *Pichardo*, 2020 WL 6323775, at *1 n.3. Vanillin can be derived from vanilla beans and from other natural sources. (*See* Compl. ¶ 41.)

vanilla than consumers expect" (*id.* ¶ 5), but notably fails to allege how much vanilla consumers would expect in the Product or how much vanilla the Product contains.

Plaintiff alleges that she purchased the Product "on one or more occasions" and "at one or more locations" based on McDonald's description of the Product as "Vanilla." (*Id.* ¶¶ 67-69.) She further alleges that she believed the Product's "taste only came from vanilla beans" (*id.* ¶ 68) and that she would not have purchased the Product or would not have paid as much for the Product absent the "Vanilla" representation. (*Id.* ¶¶ 70-71.) She does not allege how much she paid for the Product, but she claims that McDonald's charges a "premium price" compared to other similar products (which she does not identify) that do not claim to be "Vanilla." (*Id.* ¶ 55.) The image from a McDonald's self-order kiosk displays a price of $1.69. (*Id.* at 2.)

Plaintiff asserts causes of action for violation of New York General Business Law Sections 349 and 350, negligent misrepresentation, breach of warranty, fraud, and unjust enrichment. Each of these claims fails as a matter of law.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added).

When a plaintiff lacks standing to assert a claim, the claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018). "At the pleading stage, Plaintiffs have the burden of 'alleg[ing] facts that

affirmatively and plausibly suggest that [they] have standing to sue.'" *Id.* (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)).

**ARGUMENT**

**I.      Plaintiff's Claims Fail Because McDonald's Use of the Term "Vanilla" Is Not Materially Misleading to Reasonable Consumers.**

Each of Plaintiff's claims requires "materially misleading" statements or conduct. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (elements of GBL claim); *see Geffner v. Coca-Cola Co.*, 928 F.3d 198, 199 & n.7 (2d Cir. 2019) (analyzing negligent misrepresentation, fraud, warranty, and restitution claims together with GBL claims, and affirming dismissal of all claims because plaintiffs failed to plausibly allege any misleading statements). Here, all of Plaintiff's claims fail because Plaintiff has not plausibly alleged that a reasonable consumer would be misled by McDonald's use of the term "Vanilla" on some of its menus.

A representation is materially misleading only if "a reasonable consumer acting reasonably under the circumstances" would be misled. *Orlander*, 802 F.3d at 300 (citation omitted). The Second Circuit has explained that "context is crucial" in this analysis. *Geffner*, 928 F.3d at 200. "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (citation omitted). "This is because reasonable consumers understand that, with vague product descriptions, the devil is in the details." *Id.*

"It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Accordingly, courts in the Second Circuit regularly grant motions to dismiss where the alleged consumer deception is based on an unreasonable or

5

implausible interpretation of a product's name or description. *See, e.g.*, *Geffner*, 928 F.3d at 201 (affirming dismissal of claims because a reasonable consumer would not believe that "diet" soda assists weight loss); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (affirming dismissal of claims because no reasonable consumer would believe a "Steak & Egg Breakfast Sandwich" contains an "intact" cut of meat); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 341 (E.D.N.Y. 2018) (dismissing claims because representation that a juice is "cold-pressed" does not imply that it was not subjected to any other processing); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (dismissing claims because "it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats").

### A. The Product Tastes Like Vanilla, and That Is All a Reasonable Consumer Would Expect Based on McDonald's Description.

Plaintiff alleges, based only on the words "Vanilla Cone" on some McDonald's menus, that consumers believe the Product is "flavored only with vanilla" derived from the vanilla plant. (FAC ¶ 8.) No *reasonable* consumer would make that leap. A reasonable consumer ordering a soft serve cone at a quick-service restaurant understands, based on experience and common sense, that the term "vanilla" on the menu board refers only to the *flavor*, not the ingredients. Similarly, when consumers order "pistachio," "strawberry," "spumoni," "tutti frutti," or "rocky road" ice cream, they understand that those terms refer to flavors. *Cf. Steele*, 472 F. Supp. 3d at 50 ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select, from many choices (chocolate, lemon, mint, lime, etc.) the one he wants. Thus the large-type 'Vanilla' is of immediate use. Of course he is not looking for a bowl of vanilla . . ."). Here, Plaintiff concedes that the Product has a "vanilla taste" (FAC ¶ 5), so there is no misrepresentation. That the Product also contains vanilla—which Plaintiff does not dispute (*id.* ¶ 50)—confirms that there is nothing misleading about the use of "Vanilla" here.

Courts have reached this same conclusion in a series of decisions in similar cases brought by Plaintiff's counsel. For example, in *Steele*, the product at issue was Wegmans "Vanilla Ice Cream." Like Plaintiff in this case, the plaintiffs in *Steele* alleged that describing the product as "vanilla" misled consumers into believing that the flavor came exclusively from vanilla beans or vanilla bean extract, when in fact most of the flavor came from some non-vanilla source. 472 F. Supp. 3d at 49. Judge Stanton granted Wegmans' motion to dismiss because nothing about the product's label would deceive a reasonable consumer. *Id.* at 51. The label promised only a vanilla *flavor* and "does not mention vanilla beans, or bean extract." *Id.* at 50. Because "[t]hat is where the container's disclosures start, and where they stop," the court aptly noted: "Where is the deception? What is misleading, or misrepresented?" *Id.* The answer is: nothing. *Id.*

Since *Steele* was decided, four additional courts—three in the Southern District of New York and one in the Northern District of California—have reached the same conclusion. *Pichardo*, 2020 WL 6323775, at *5 (protein shake labeled "Smooth Vanilla" was not misleading because, absent qualifying words such as "made with" or "contains," "reasonable consumers associate the word 'vanilla' with a flavor, not with an ingredient"); *Cosgrove*, 2020 WL 7211218, at *4 ("Defendant's [almond milk] Product does not use the words 'vanilla bean' or 'vanilla extract,' nor does it use language such as 'made with vanilla' or anything similar. The Product makes one representation—that it is vanilla flavored—and Plaintiffs do not allege that the Product did not deliver on that representation. This alone is fatal to Plaintiffs' case."); *Barreto*, 2021 WL 76331, at *9 ("Westbrae's product makes a representation regarding its flavor and does not imply or represent the source of that flavor comes exclusively or predominantly from natural vanilla); *Clark*, 2020 WL 7043879, at *3 (as used on the front of a soymilk container, "[t]he word 'vanilla' itself does not suggest to the reasonable consumer that the flavor comes exclusively from the vanilla bean").

So too here. "Vanilla Cone" describes the Product's flavor—distinguishing it from, say, chocolate soft serve. The Complaint does not allege that McDonald's makes any other vanilla claims with respect to the Product. McDonald's does not, for example, claim that the Product is "made with" vanilla. Under these circumstances, no reasonable consumer would understand the word "vanilla" to mean that the product is flavored ***exclusively*** with vanilla beans or vanilla extract. And any consumer who is "interested in the actual ingredients" can ask for that information at the point of sale or check McDonald's website for the ingredient list, "which mentions neither vanilla beans nor extracts, but [does list] Natural Flavor." *Steele*, 472 F. Supp. 3d at 50. No reasonable consumer would be misled.

**B.     The FDA Regulations Cited in the Complaint Are Inapplicable and Irrelevant.**

The FAC includes a lengthy discussion of FDA flavor labeling regulations (and Plaintiff's counsel's interpretation of them) that apply to *packaged* ice cream. For example, the FAC describes the "three categories" of ice cream flavor names that may be used on the principal display panel of a carton of ice cream (FAC ¶ 21); opines that natural flavors may need to be described as artificial in some circumstances (*id.* ¶ 22); and claims that vanilla flavorings are the only flavorings subject to a standard of identity (*id.* ¶ 18).

None of these regulations have any bearing on the issues in this case. The Product does not have a package or label, and the cited regulations do not apply to food served in quick-service restaurants like McDonald's. The FDA labeling regulations specifically exempt foods "served in restaurants" or "in other establishments in which food is served for immediate human consumption" including "ice cream shops." 21 C.F.R. § 101.9(j)(2)(i)-(ii); *see also Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 537 (S.D.N.Y. 2003) (distinguishing a Haagen–Daaz

pint of ice cream from food served at McDonald's, and noting that the latter is exempt from labeling regulations promulgated under the Nutrition Labeling and Education Act of 1990).[4]

Even if the regulations Plaintiff cites applied to the Product, those regulations are not relevant to Plaintiff's claim of consumer deception. Plaintiff cannot privately enforce the FDA flavoring regulations, either directly under the Food, Drug & Cosmetic Act, *see PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997), or indirectly through the GBL, *see Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005) (rejecting attempt to plead a violation of a federal statute with no private cause of action as a GBL claim); *Verzani v. Costco Wholesale Corp.*, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F. App'x 29 (2d Cir. 2011) (plaintiff cannot "salvage" an otherwise implausible claim by alleging a violation of the FDCA).

Nor do the FDA regulations speak to the dispositive question here—whether a reasonable consumer would be deceived. The reasonable-consumer analysis is an objective inquiry that considers context. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 190 (E.D.N.Y. 2018). Accordingly, courts have held that reasonable consumers would not be misled even where the challenged practice arguably violates a regulation. *See id.* at 190-91 (even assuming a technical violation of the FDA slack-fill regulations, no reasonable consumer would be misled, in part because "consumers have come to expect at least some slack-fill"); *Verzani*, 2010 WL 3911499, at *3; *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) ("[T]he FDA guidance document is not binding authority for purposes of Bush's consumer deception claims. Those claims are brought under California consumer protection laws. Courts, not the FDA, determine whether a product is misleading under those laws.").

---

[4] The only FDA "labeling" regulations applicable to restaurants are the menu-labeling regulations. *See* 21 C.F.R. § 101.9(j). But those regulations require only that calories be disclosed and certain other nutritional information be posted or available upon request; they do not incorporate or require compliance with the regulations cited in the Complaint. *See* 21 C.F.R. § 101.11.

C.   **Plaintiff's Support for Her Understanding of Consumer Expectations Is Not Sufficient to Establish a Plausible Claim of Deception.**

Other than her own say-so, the only alleged support for Plaintiff's theory that McDonald's use of the term "Vanilla" would mislead a reasonable consumer is a purported "consumer survey" commissioned by Plaintiff's counsel and a trade journal article discussing FDA flavor regulations. Neither makes Plaintiff's theory plausible.

All the FAC alleges regarding the "consumer survey" is that it supposedly found "that over sixty-five (65) percent of consumers expected the Product's vanilla taste to come from vanilla beans, from the vanilla plant." (FAC ¶ 26.) This conclusory allegation is unsupported by any facts regarding the survey's methodology, and Plaintiff did not attach a copy of the survey instrument to the FAC and has refused to provide McDonald's a copy. The survey's "finding" is nothing more than "a legal conclusion couched as a factual allegation" and, therefore, need not be accepted as true on this motion. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Even taken at face value, the survey allegation does not save Plaintiff's claims. First, as the Ninth Circuit recently held, a consumer survey cannot salvage a claim that is otherwise implausible. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019). Five different judges have already held that the same theory presented here is implausible, as discussed above. *See also Pichardo*, 2020 WL 6323775, at *6 (dismissing claims as implausible *despite consumer survey* submitted by plaintiffs). Second, the survey allegation *does not support Plaintiff's theory*. The FAC alleges only that survey respondents "expected the Product's vanilla taste to come from vanilla beans" (FAC ¶ 26), which Plaintiff concedes it does (*id.* ¶ 40). But the FAC does not allege that survey respondents agreed with the second component of Plaintiff's theory: that the vanilla taste comes *exclusively* or *predominantly* from vanilla beans. *See Hawyuan Yu v. Dr Pepper Snapple Group, Inc.*, 2020 WL 5910071, at *6 (N.D. Cal. Oct. 6,

2020) (holding that consumer survey did not fit plaintiff's theory and thus did not help allege a plausible claim).

Plaintiff fares no better with her allegation about a trade journal article, which in turn cites FDA regulations, for the proposition that consumers expect "vanilla" ice cream to be flavored exclusively with vanilla beans "unless labeled otherwise." (FAC ¶ 23 (citing John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, *Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.*, Perfumer & Flavorist, Apr. 25, 2018).) Again, this Product does not have a label and is not subject to the cited FDA regulations. Additionally, this is another legal conclusion unsupported by any *factual* allegations regarding consumers' expectations and experiences with vanilla soft serve at quick-service restaurants like McDonald's. *See Clark*, 2020 WL 7043879, at *4 (allegation that FDA regulations inform consumers' expectations is "only a conclusion; it does not include any facts that plausibly support the inference Plaintiff wants the Court to draw"); *N. Am. Olive Oil Ass'n v. Kangadis Food, Inc.*, 962 F. Supp. 2d 514, 519-21 (S.D.N.Y. 2013) (plaintiffs failed to demonstrate that "the perceptions of ordinary consumers align with [the] labeling standards").

### D.  Plaintiff's GC-MS Test Results Are Unreliable and Immaterial to the Claims.

To give her implausible, subjective interpretation of "Vanilla" an aura of scientific objectivity, Plaintiff included in the FAC the alleged results of a purported gas chromatography-mass spectrometry ("GC-MS") analysis of the Product. (FAC at 7.) Based on this analysis, Plaintiff alleges that the Product contains "less real vanilla and contains added vanillin." (*Id.* ¶ 40.) These allegations do not alter the legal analysis discussed above.

The GC-MS allegations suffer from several flaws that make it unreliable on its face and thus insufficient to plausibly support the claims. First, there is no "control" condition—*i.e.*, an analysis of a similar product with a known flavor composition. Without such a control, Plaintiff

has no basis to allege that the test could have detected the small amounts of vanilla "marker compounds" that Plaintiff says were missing, or to validate the "ratios" of compounds that supposedly indicate the presence of added vanillin. (*See* FAC ¶¶ 35-40.) Second, no one qualified to interpret the results has vouched for the conclusions Plaintiff draws from them; the FAC does not even disclose the laboratory that performed the test. *See BASF Wyandotte Corp. v. Costle*, 598 F.2d 637, 646 (1st Cir. 1979) (noting that gas chromatography "is neither simplistic nor self-executing. . . . The method succeeds only in careful and expert hands.").

For these reasons, Plaintiff's allegations based on the GC-MS analysis are no better than speculation and should be disregarded. *See Steele*, 472 F. Supp. 3d at 51 (disregarding similar GC-MS analysis at motion to dismiss stage because "[t]he test may just confirm that the vanilla flavor derives solely from vanilla extract" and "[w]hat is needed is to test, not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers" associated with the vanilla plant); *see also Wu v. Good Samaritan Hosp. Med. Ctr.*, 2019 WL 2754865, at *4 (E.D.N.Y. July 2, 2019), *aff'd,* 815 F. App'x 575 (2d Cir. 2020) (speculation does not constitute a factual allegation under *Iqbal* and *Twombly*).

But even accepting these allegations as true for purposes of this motion, they change nothing. An even more extreme allegation—that the amount of vanilla was *de minimis*—was made and rejected in each of the prior vanilla cases. As the *Pichardo* court noted, "Plaintiffs have not explained why the amount of vanilla taste coming from vanilla extract is material" to a reasonable consumer. 2020 WL 6323775, at *6. Moreover, even when a label speaks to the presence of an ingredient—and here the Product's "labeling" does not—a reasonable consumer does not automatically assume that the ingredient is present in significant quantities or is the exclusive ingredient in its category. *See, e.g.*, *Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *9, 12-13 (E.D.N.Y. July 10, 2020) (holding that neither "grahams" nor "made with

honey" would mislead a reasonable consumer into believing that graham flour and honey were the exclusive or predominant flour and sweetener in the products); *Sarr*, 2020 WL 729883, at *4 (dismissing implausible claim that "made with real butter" representation would cause reasonable consumers to assume the product did not contain additional fats); *Reyes v. Crystal Farms Refrigerated Distribution Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (same).

### E.    Plaintiff's Allegation that the Product Should Be Labeled "Artificially Flavored" Is Incorrect and Inconsequential.

Plaintiff asserts that the Product "needs to be labeled as artificially flavored" because it allegedly contains vanillin from non-vanilla sources. (FAC ¶ 43.) This argument is not based on any allegation that the Product contains artificial flavor ingredients. (*See id.* ¶¶ 32-41 (discussing GC-MS analysis and not identifying any artificial or synthetic components).) Rather, this claim is based on Plaintiff's counsel's interpretation of the FDA regulations as requiring a product to be labeled "artificially flavored" if it contains any compounds "that simulate vanilla but are not derived from vanilla beans." (*Id.* ¶ 44; *see also id.* ¶ 50 (citing 21 C.F.R. § 135.110(f)(2)(iii)).) As explained above, however, those FDA regulations do not apply to the Product, which has no label and is served in a restaurant setting. In any event, there can be no deception because Plaintiff does not allege that McDonald's represented the Product to consumers as "natural." Consumers receive exactly what they expect: a soft-serve cone that tastes like vanilla.

### F.    Plaintiff's Unpleaded Theory that the Product Does Not Actually Taste Like Vanilla Cannot Save Her Claims.

Finally, Plaintiff argued in her pre-motion letter that "the Product is simply not 'vanilla'" because it "lacks detectable levels of odor-active compounds that are critical to the expected vanilla taste." (ECF No. 25 at 2.) This allegation appears nowhere in the FAC, and for that reason alone it cannot sustain Plaintiff's claims. *See Red Fort Capital, Inc v. Guardhouse Prods.*

*LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

This unpleaded theory is also invalid. For one thing, it contradicts Plaintiff's allegations that the Product has a "vanilla taste" (FAC ¶ 5), and that other compounds allegedly present in the "Natural Flavor" used in the Product "mimic the taste provided by vanilla." (*Id.* ¶ 30.) These allegations are judicial admissions that Plaintiff cannot discard in an amended pleading. *See Pichardo*, 2020 WL 6323775, at *6 (disregarding allegation that "runs headlong into Plaintiffs' acknowledgement in the original complaint" of inconsistent facts).

In addition, Plaintiff's unpleaded theory is not plausible. When consumers purchase the Product, they know they are purchasing soft serve, not "a bowl of vanilla." *Steele*, 472 F. Supp. 3d at 50. Vanilla soft serve does not have a single, standard taste that each brand must replicate. Rather, "[i]n a highly competitive market for consumer taste, ice cream producers seek not just a vanilla ice cream, but a different and better tasting vanilla ice cream than their competitors." *Id.* at 50 n.1. If consumers do not enjoy the taste of the McDonald's soft serve, they do not have to purchase it again. But they have not been misled by McDonald's use of the term "Vanilla."

\*       \*       \*

In sum, no reasonable consumer would interpret the Product's labeling or be deceived in the way Plaintiff claims she was. All her claims therefore fail as a matter of law.

## II.     The GBL Claim Also Fails Because Plaintiff Has Not Plausibly Alleged that She Paid a Price Premium.

Plaintiff's GBL claim fails for the additional reason that she has not sufficiently pleaded the third element of this claim—that she "suffered injury" as a result of McDonald's use of the term "Vanilla" to describe the Product. *Orlander*, 802 F.3d at 300.

To plead injury under the GBL, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."

14

*Id.* at 302. An overpayment—or so-called "price premium"—caused by the allegedly deceptive practice can satisfy the injury requirement. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). But merely invoking the term "price premium" is insufficient; a plaintiff must allege facts demonstrating that she overpaid—and, therefore, did not receive the full value of her purchase—on account of the deceptive practice. *See id.* (holding that plaintiff's "conclusory allegations" of a price premium failed to adequately plead injury under the GBL); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at \*7 (S.D.N.Y. Oct. 26, 2016) (same); *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at \*4 (S.D.N.Y. Jan. 19, 2018) (same); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at \*7-8 (S.D.N.Y. Jan. 23, 2018) (same).

Here, Plaintiff has not alleged *any* facts to support her conclusory allegations of a price premium. She alleges that the Product's price exceeds that of "other similar products represented in a non-misleading way" (FAC ¶ 55), but she does not give examples of these other similar products, let alone allege the prices they sell for. *See Colella*, 348 F. Supp. 3d at 143 (noting plaintiff's failure to allege the amount of the price premium or the prices of non-premium products). Plaintiff also alleges that she would not have paid as much for the Product had she known the "truth" (FAC ¶ 54), but this by itself is insufficient to allege an injury, *see DaCorta*, 2018 WL 557909, at \*7-8, and her subjective willingness to pay is not an indicator of the objective economic value of the Product, *see Borenkoff*, 2018 WL 502680, at \*4.

## III.   Plaintiff's Ancillary Claims Also Fail as a Matter of Law for Additional Reasons.

As explained above, each of Plaintiff's remaining claims—for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment—fail because Plaintiff has not plausibly alleged any materially misleading statements. *See Geffner*, 928 F.3d at 199 & n.7. These claims also fail for other reasons, as detailed below. Tellingly, Plaintiff's counsel abandoned these claims in another "vanilla" case where the plaintiffs made substantially the

same allegations. *See* ECF Nos. 33 & 37, *Parham v. Aldi, Inc.*, No. 19-cv-08975 (S.D.N.Y.). The claims are not viable here, either, and they should be dismissed.

### A.   Plaintiff's Negligent Misrepresentation Claim Fails for Lack of a "Special Relationship."

To recover for negligent misrepresentation in the commercial context, there must be "a special relationship of trust or confidence . . . between the parties." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996). Courts have allowed claims against lawyers, accountants, and engineering consultants, for example, *see id.*, but "not individuals in arm's length relationships such as employer/employee," *Fallman v. Hotel Insider Ltd*, 2016 WL 316378, at *9 (S.D.N.Y. Jan. 15, 2016), borrower/lender, *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014), or bank/customer, *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77, 84 (N.Y. 2011). It is not enough for the plaintiff to show that "the parties are familiar or friendly" or have "a long-standing relationship." *Id.* (citation omitted). Nor will "all representations made by a seller of goods . . . give rise to a duty to speak with care." *Kimmell*, 675 N.E.2d at 454. Instead, the plaintiff must show that there was "a closer degree of trust between the parties than that of the ordinary buyer and seller." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).

Plaintiff does not allege that she had a special relationship with McDonald's. She simply says that she purchased the Product "on one or more occasions." (FAC ¶ 67.) Courts have repeatedly held that the mere purchase of a food product does not create a special relationship. *See Sarr*, 2020 WL 729883, at *6-7 (mashed potatoes); *Stoltz v. Fage Dairy Processing Indus., S.A.*, 2015 WL 5579872, at *24-26 (E.D.N.Y. Sept. 22, 2015) (Greek yogurt); *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 193 (S.D.N.Y. 2016) (protein powder); *Izquierdo*, 2016 WL 6459832, at *8-9 (candy). Otherwise, a special relationship would "always exist for purposes of misbranded food claims, which is not the case." *Stoltz*, 2015 WL 5579872, at *25.

16

In her response to McDonald's pre-motion letter, Plaintiff argued that McDonald's knowledge about its products "is sufficient to establish the relationship of trust necessary for this claim." (ECF No. 25 at 3.) This argument fails for two reasons. First, "[e]xpertise alone cannot create a special relationship when 'the relationship between the parties is too attenuated.'" *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011)). Second, even if special expertise could make up for the absence of a special relationship, the defendant would need something more than "mere[] 'knowledge of the particulars of [its] business.'" *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 76 (E.D.N.Y. 2017) (citation omitted). Here, that is all Plaintiff has alleged, namely, that McDonald's "held itself out as having knowledge and experience in the production, service and/or sale of the product type." (FAC ¶ 93.)

Because Plaintiff has neither claimed that she had a special relationship of trust or confidence with McDonald's nor alleged that McDonald's had anything more than ordinary knowledge of the particulars of its business, the Court should dismiss the negligent misrepresentation claim.[5]

**B.      Plaintiff's Warranty Claims Fail for Multiple Reasons.**

**1.      All the Warranty Claims Fail Because Plaintiff Did Not Provide Adequate Pre-Suit Notice.**

Before bringing a warranty claim, a plaintiff "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy.*" N.Y. U.C.C. Law § 2-607(3)(a) (emphasis added). Failure to provide this pre-suit

---

[5] Because Plaintiff has not adequately alleged a "special relationship," her claims are also barred under the economic-loss doctrine. *See, e.g.*, *Elkind v. Revlon Consumer Prod. Corp.*, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015); *Gordon v. Hain Celestial Grp., Inc.*, 2017 WL 213815, at *6-7 (S.D.N.Y. Jan. 18, 2017); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015).

notice is grounds for dismissing each of the warranty claims asserted here. *See Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260-61 (E.D.N.Y. 2014) (express and implied warranty); *Bassaw v. United Indus. Corp.*, 2020 WL 5117916, at *4 (S.D.N.Y. Aug. 31, 2020) (MMWA).

Plaintiff alleges that she "provided *or will provide* notice to defendant, its agents, representatives, retailers and their employees." (FAC ¶ 101 (emphasis added).) This allegation is insufficient to satisfy this pleading requirement. For one thing, it does not specify when or how Plaintiff gave such notice—if at all. Nor does it explain what type of notice was given, if any, making it impossible for the Court to determine whether any notification was "sufficient to let the seller know that the transaction is still troublesome and must be watched." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *28 (E.D.N.Y. Aug. 29, 2013) (citation omitted).

Notably, Plaintiff did not identify any pre-suit notice in response to McDonald's pre-motion letter. Instead, she argued that no pre-suit notice is required in cases involving "retail customers." (ECF No. 25 at 3.) Only "a minority" of courts have recognized this exception, *Colella*, 348 F. Supp. 3d at 143-44, and those courts have applied it only where the plaintiff was *physically injured* by the defendant's product. *See Bassaw*, 2020 WL 5117916, at *4 n.3; *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 245 (S.D.N.Y. 2020); *Colella*, 348 F. Supp. 3d at 143-44. Plaintiff has not alleged anything of the sort here. Therefore, any "retail exception" to the pre-suit notice requirement does not apply, and the Court should dismiss all of Plaintiff's warranty claims for lack of pre-suit notice.

### 2.    The Implied Warranty Claim Also Fails Because Plaintiff Does Not Allege that the Product Is Unfit for Consumption.

The implied warranty of merchantability claim also fails because Plaintiff does not allege that the Product is unfit for human consumption. The implied warranty of merchantability is not a guarantee that "the product will fulfill a 'buyer's every expectation.'" *Silva v. Smucker Nat.*

*Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (citation omitted). Instead, for a food product to be unmerchantable, it must be unfit for human consumption. *See id.*

Plaintiff does not claim that the Product is unsafe or unfit to eat. She merely alleges that it was incorrectly "labeled" because it did not "tell consumers . . . that the Product contains non-vanilla flavors, and/or . . . vanillin from non-vanilla sources." (FAC ¶ 87.) These allegations are a far cry from the types of cases where courts have found that a product is unfit for consumption, such as where consumers found a nail in a cake, or a mouse, insect, or two AA batteries in a bottle of Coke. *See Vamos v. Coca-Cola Bottling Co. of New York*, 627 N.Y.S.2d 265, 268-69 (Civ. Ct. 1995) (collecting cases). Because Plaintiff does not (and cannot) allege that the Product is unfit for human consumption, the implied warranty claim should be dismissed.

### 3. The MMWA Claim Also Fails Because It Is Derivative of the State-Law Warranty Claims and Because "Vanilla" Is Not a Written Warranty.

If Plaintiff's express and implied warranty claims are dismissed for any of the reasons cited above, her MMWA claim also must be dismissed because it is derivative of state-law warranty claims. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016). But even if Plaintiff's state-law warranty claims survive, the MMWA claim fails for the independent reason that "Vanilla" is not a written warranty under the MMWA.

An MMWA claim requires a breach of a "written warranty." 15 U.S.C. § 2310(d)(1). The MMWA defines "written warranty" narrowly to include only written promises or affirmations that the material or workmanship of a consumer product "is defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Most product labels "do not fall within the ambit of the MMWA," *Newton v. Kraft Heinz Foods Co.*, 2018 WL 11235517, at *6 (E.D.N.Y. Dec. 18, 2018), because they neither promise that the product is defect free nor guarantee a specific level of performance over a specific period of time. *See, e.g.*,

*Silva v. Hornell Brewing Co.*, 2020 WL 4586394, at \*6 (E.D.N.Y. Aug. 10, 2020) ("All Natural"); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("Restores Enamel"); *In re Frito-Lay*, 2013 WL 4647512, at \*17 ("All Natural"). These types of labels are, "at best," descriptions of the product, not promises of a specific level of performance over a set period of time. *Newton*, 2018 WL 11235517, at \*6.

The representation at issue here is "Vanilla"—as in "Vanilla Cone." (FAC ¶ 2.) "Vanilla" is only a flavor description. It neither promises that the Product is "defect free," nor guarantees that it will "meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Therefore, it is not a written warranty under the MMWA.

### C. The Fraud Claim Fails Because Plaintiff Has Not Alleged Facts Giving Rise to a Strong Inference of Fraudulent Intent.

To state a claim for fraud under New York law, a plaintiff must, among other things, "allege facts that give rise to a strong inference of fraudulent intent." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996). The plaintiff can do this by "show[ing] that defendants had both motive and opportunity to commit fraud, or by . . . alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*

Plaintiff has not satisfied either standard. To begin, Plaintiff offers no specific motive for McDonald's to defraud its consumers, other than the general assertion that McDonald's received "additional profits" from its sale of the Product. (FAC ¶ 52.) Courts have "consistently rejected" "a generalized profit motive" "as a basis for inferring fraudulent intent." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater New York*, 2009 WL 928718, at \*6 (E.D.N.Y. Mar. 31, 2009); *see also Sarr*, 2020 WL 729883, at \*9; *In re Frito-Lay*, 2013 WL 4647512, at \*25. Otherwise, plaintiffs could infer fraudulent intent in virtually every case involving a for-profit company, making the motive requirement essentially "meaningless." *Chill v. Gen. Elec.*

*Co.*, 101 F.3d 263, 268 n.5 (2d Cir. 1996); *see also In re Lyman Good Dietary Supplements Litig.*, 2018 WL 3733949, at \*4 (S.D.N.Y. Aug. 6, 2018).

Plaintiff also alleges that McDonald's "knew its statements were neither true nor accurate." (FAC ¶ 107.) But this allegation is completely conclusory, "devoid of accompanying factual allegations," and thus "insufficient to support a strong inference of fraudulent intent." *Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at \*7 (E.D.N.Y. Feb. 20, 2018) (collecting cases), *report and recommendation adopted,* 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). Ultimately, the FAC lacks any *facts* suggesting—strongly or otherwise—that McDonald's intended to defraud its customers.

### D.     The Unjust Enrichment Claim Should Be Dismissed as Duplicative.

Finally, Plaintiff's unjust enrichment claim should be dismissed as duplicative because it relies on the same factual allegations as her other claims. Under New York law, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

In her pre-motion letter, Plaintiff argued that she should be allowed to plead an unjust enrichment claim in the alternative. (ECF No. 25 at 3.) This argument fails for two reasons. First, the FAC does not actually plead unjust enrichment in the alternative. Plaintiff's unjust enrichment claim consists of only two paragraphs—one incorporating all the preceding paragraphs of the FAC, and the other alleging that McDonald's has been unjustly enriched. (FAC ¶¶ 109-110.) Neither paragraph says that this is an alternatively-pled claim. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 307 (7th Cir. 2018) (dismissing a duplicative unjust enrichment claim under New York law because it was not pleaded in the alternative); *Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281, 296 (S.D.N.Y. 2016) (same).

Second, even if an unjust enrichment claim is pled in the alternative, it "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see also Marini v. Adamo*, 644 F. App'x 33, 35-36 (2d Cir. 2016) (stating that "the district court erred in ruling against defendants" on an unjust enrichment claim because it was duplicative of the plaintiffs' other claims). Here, the unjust enrichment claim is duplicative of the other claims because it is based on the same underlying conduct—allegedly misleading "labeling" of the Product. (FAC ¶ 109-10.) Where plaintiffs have brought an unjust enrichment claim as well as other claims in food-labeling cases, courts in this district have dismissed the unjust enrichment claims as duplicative. *See Sarr*, 2020 WL 729883, at *10; *Melendez*, 2020 WL 1283793, at *8. The Court should reach the same result here.

## IV.   Plaintiff Lacks Standing to Seek Injunctive Relief Because She Cannot Demonstrate a Likelihood of Future Injury.

If any of the claims survive, Plaintiff's request for injunctive relief must be dismissed pursuant to Rule 12(b)(1) because she lacks Article III standing to seek this remedy.

To have standing to seek injunctive relief, a plaintiff must face a threatened injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). In a putative class action, the "plaintiff seeking to represent a class must personally have standing" for each form of relief that she is seeking. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.*

Here, Plaintiff does not face a real or immediate threat of future harm because— according to the FAC—she now knows the supposed "truth" about the Product's contents. (*See* FAC ¶¶ 27-33.) Thus, she is at no risk of being harmed again because she now has "the exact

'level of information that [she claims she was] owed from the beginning.'" *Kennedy*, 2020 WL 4006197, at *5 (quoting *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020)); *see also Davis*, 297 F. Supp. 3d at 339 ("To the extent that plaintiff was deceived by defendants' products, he is now aware of the truth and will not be harmed again in the same way."); *Jones v. Welch Foods Inc.*, 2020 WL 7024343, at *2 (E.D.N.Y. Nov. 30, 2020) (similar).

This conclusion is reinforced by Plaintiff's allegation that "she would not have bought the Product or would have paid less for it" if she had "known the truth" (FAC ¶ 54), which is "essentially [a concession] that [plaintiff] will not buy the [products], or be misled by Defendants' marketing, again in the future." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).

## V.     Plaintiff's Claims Should Be Dismissed with Prejudice.

Finally, dismissal should be with prejudice. Although leave to amend should be freely given "when justice so requires," it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2nd Cir. 2007). Justice does not require that a plaintiff be permitted to amend when it would be futile, *id*, or "when, 'being on the plainest notice of what was required,' [the plaintiff] fails to correct the deficiencies in a prior pleading." *Coal. for a Level Playing Field, LLC v. Autozone, Inc.*, 813 F. Supp. 2d 557, 565 (S.D.N.Y. 2011) (citation omitted); *see Bautista*, 223 F. Supp. 3d at 194 (granting dismissal with prejudice where the parties had exchanged pre-motion letters).

Plaintiff has had substantial opportunity to remedy the problems with her pleading. She amended her complaint in response to McDonald's first pre-motion letter, which raised substantially the same arguments as this motion. (*See* ECF No. 13.) In her response to McDonald's second pre-motion letter, Plaintiff argued that each of her claims is sufficient as pleaded in the FAC and did not request leave to amend. (*See* ECF No. 25.) Plaintiff also had

notice, through her counsel, of the deficiencies identified in *Steele*, *Pichardo*, *Cosgrove*, *Clark*, *Barreto* and numerous other "vanilla" cases in which pre-motion letters or motions to dismiss have been filed. Plaintiff should not be allowed to proceed on a "trial and error" basis on the chance that her *next* pleading will address the deficiencies identified in her original pleading.

Moreover, there is no reason to expect that a further amended pleading would be viable. Her claims suffer from "fundamental flaws," *Pichardo*, 2020 WL 6323775, at *6, and her unpleaded theory that the Product does not actually taste like vanilla contradicts her current pleading and is implausible on its face. *See supra* at 13-14. Because Plaintiff already amended the complaint once and further amendment would be futile, the FAC should be dismissed with prejudice. *See Pichardo*, 2020 WL 6323775, at *6.

## CONCLUSION

For the reasons stated above, McDonald's respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

Dated: January 15, 2021                    *s/ Sarah L. Brew*
                                           Sarah L. Brew (admitted *pro hac vice*)
                                           Tyler A. Young (admitted *pro hac vice*)
                                           Rory F. Collins (NY Bar. No. 5549670)
                                           2200 Wells Fargo Center
                                           90 South Seventh Street
                                           Minneapolis, MN 55402-3901
                                           Telephone: (612) 766-7000
                                           Fax: (612) 766-1600
                                           sarah.brew@FaegreDrinker.com
                                           tyler.young@FaegreDrinker.com
                                           rory.collins@FaegreDrinker.com

                                           Lucas B. Michelen
                                           1177 Avenue of the Americas, 41st Floor
                                           New York, NY 10036

24

Telephone: (212) 248-3140
Fax: (212) 248-3141
lucas.michelen@FaegreDrinker.com

*Attorneys for Defendant McDonald's Corporation*